IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 1:13cr310-7 |
| ) | The Hon. Gerald Bruce Lee |
| WILSON DANIEL ) | |
|     PERALTA-BOCACHICA, ) | |
| ) | |
|     Defendant. ) | |
| _____) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PERALTA-BOCACHICA'S MOTION TO DISMISS COUNT VII OF THE INDICTMENT AS UNCONSTITUTIONAL AS APPLIED

COMES NOW, Defendant Wilson Daniel Peralta-Bocachica, and in support of his Motion to dismiss Count VII of the indictment due to the fact that the application of extraterritorial jurisdiction to the acts alleged in this case pursuant to 18 U.S.C. 1512(h) constitutes a Due Process violation in violation of the Fifth Amendment to the United States Constitution *See* U.S. Const., Amend. V hereby states as follows:

## BACKGROUND

Wilson Peralta-Bocachica ("Mr. Peralta") is charged with one count of violation of 18 U.S.C. 1512(c), or Obstructing an Official Proceeding, in relation to an incident occurring in the late evening hours of June 20, 2013 in Bogota, Colombia. Specifically, DEA Special Agent James Terry Watson was killed during a robbery known as a "paseo millionario," or "express kidnapping" at approximately 11:30 that night.  Mr. Peralta is not alleged to have participated in the robbery or killing of Agent Watson.  However, the "scene of the crime" was allegedly a

1

taxicab shared by Mr. Peralta and one other cab driver who is charged in this case with the killing of Agent Watson.[1]

It is alleged that at that sometime between 48 and 96 hours after Agent Watson's murder – which was publicized on the news and was in fact recorded by security cameras in the Bogota neighborhood where it occurred – Mr. Peralta washed out the taxicab, asked someone to and/or did himself burn the rags used to clean the vehicle, and switched out the back seat with one from another taxi owned by the same man.  The switching of the seat was with the owner's consent and participation, as well as with the participation of the owner of the other car, who were acting at the direction of the Colombian National Police.  This activity is the alleged "actus reus" and the reason he has been indicted.

## **THE STATUTE**

In relevant part, 18 U.S.C. 1512 states:

**(c)** Whoever corruptly—
**(1)** alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
**(2)** otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both

and

**(h)** There is extraterritorial Federal jurisdiction over an offense under this section.

---

[1] The practice in Colombia is for two drivers to share a taxi, with one driving at night, and one driving during the day. Mr. Peralta normally had possession of the taxi from 4 a.m. to 4 p.m. each day, with the other driver having the other twelve hour shift.  Neither man owned the taxi; it was owned by third man who himself became aware of the car's involvement in the crime sometime within the twenty-four hours after Agent Watson's murder.

## STATE OF THE LAW ON EXTRATERRITORIAL JURISDICTION

I.  *Congressional Intent: Express or Inferred*

Generally, there is a presumption against extraterritorial application of our criminal statutes.  *See* <u>United States v. Bowman</u>, 260 U.S. 94, 95 (1922).  The first inquiry, therefore, is whether Congress made its intent to expand jurisdiction of the statute beyond U.S. borders by use of explicit language. *See* <u>Equal Employment Opportunity Comm'n v. Arabian American Co.</u>, 499 U.S. 244, 248 (1991); *see also* <u>In re French</u>, 440 F.3d 145, 151 (4th Cir. 2006).  18 U.S.C.1512(c) contains that explicit language, but where that is not the case, an exercise in statutory construction commences which boils down to an analysis of Congressional intent and reach.

Threats to United States security and/or direct interference with a governmental function of the United States, *wherever they may occur*, are deemed both within Congress' intended and actual reach under the "protective theory."  *See id.;* <u>United States v. Alomia–Riascos</u>, 825 F.2d 769, 771 (4th Cir.1987); <u>United States v. Fernandez</u>, 496 F.2d 1294, 1296 (5th Cir. 1974) (intended and actual fraud against the U.S. Treasury). The "objective theory" of extraterritorial jurisdiction, on the other hand, applies to "[a]cts done outside a jurisdiction, but intended to produce and producing effects within it." <u>Strassheim v. Daily</u>, 221 U.S. 280, 284-85, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911), so, to cases in which one finds the "intentional direction of the crime towards the United States." <u>United States v. Columba-Colella</u>, 604 F.2d 356 (5th Cir.)

It is clear from these two theories of inferring extraterritorial jurisdiction that the question of when Congress not only *intends* but *has the power to* apply a criminal statute extraterritorially (even when it doesn't say so) is inevitably and appropriately grounded in questions of notice, fairness and ultimately, due process.  Even where, as here, there *is* an explicit statement of Congress' intent to apply the statute extraterritorially therefore, the Court must still consider the

question of whether to proceed with the prosecution would violate due process. It is Defendant's contention that to apply 18 U.S.C. 1512(c) to his activities as alleged in the indictment does constitute such a violation and that the Court should therefore dismiss Count VII of the indictment and order his immediate release.

II.    *The "Nexus" Test for Due Process*

In an unpublished opinion, <u>United States v. Mohammad-Omar</u>, 323 Fed. Appx. 259, 261 (4th Cir. 2009), the Fourth Circuit employed a "nexus" test borrowed from the Ninth and Second Circuits for determining whether due process is served or violated by the extraterritorial application of a criminal statute. "[T]o apply a federal criminal statute to a defendant extraterritorially without violating due process, 'there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair.'" <u>Mohammad-Omar</u>, 323 Fed. Appx. at 261 (quoting <u>United States v. Yousef</u>, 327 F.3d 56, 111 (2nd Cir. 2003)); *see* <u>United States v. Davis</u>, 905 F.2d 245, 248-49 (9th Cir. 1990). The Court compared the nexus requirement to the minimum contacts test used for questions of personal jurisdiction which ensures that someone brought into Court using extraterritorial jurisdiction "should reasonably anticipate being haled into court in this country.'" <u>Mohammad-Omar</u>, 323 Fed. Appx. at 261 (citation omitted).

In subsequent published opinions, while acknowledging a due process analysis *is* required before the application of extraterritorial jurisdiction can stand, the Fourth Circuit has fallen short of explicitly adopting the nexus approach as controlling precedent. However, the Court has consistently *followed* said approach, basing rulings on a "nexus" analysis as set forth in <u>Mohammad Omar.</u> For example, in affirming the district court's holding in <u>United States v. Ayesh</u>, 762 F.Supp 2d 832 (E.D.VA 2011), the Fourth Circuit followed the district court's lead in

addressing the due process question even though the parties had not raised it, and in so doing adopted the district court's language which was borne of an expressly reliance on <u>Mohammad Omar</u> and its "nexus" test as precedent.  *See* <u>United States v. Ayesh</u>, 702 F.3d 162 (4th Cir. 2012); <u>Ayesh</u>, 762 F.Supp 2d at 842.  In its opinion, the district court held that "the record facts establish a sufficient nexus between defendant and the United States to warrant prosecuting defendant in this country" because "Ayesh's 'employment with the Department of State at the United States Embassy in Baghdad was central to the commission of his alleged crimes" and that "Ayesh lived on the embassy compound, and was provided with a copy of the Foreign Service National Handbook, which advised him that he was subject to the laws and regulations of the United States." *See* <u>Ayesh</u>, 762 F.Supp 2d at 842.

Likewise, in <u>United States v. Brehm</u>, 691 F.3d 547 (4th Circ. 2012) the Fourth Circuit found that due process was satisfied in the prosecution of an assault by a South African citizen on a British citizen occurring at Kandahar Airforce Base (KAF) for similar reasons and by similar reasoning -- clearly a "nexus" approach.  There, the Court stated that it was

> Brehm's status as an employee of DynCorp[2] that brings his actions at KAF within the criminal misconduct that [the Act] was enacted to govern; . . . Indeed, Brehm's very presence inside KAF was possible only pursuant to an official DOD Letter of Authorization, entitling him to DOD-furnished transportation, meals, and equipment. Although KAF was not technically territory of the United States, the American influence was so pervasive[3] that we think it a suitable proxy for due process purposes, such that the imposition of American criminal law there is not arbitrary.

<u>Brehm</u>, 691 F.3d 552-553.  In addition, Brehm's actions affected significant American interests on the base including the preservation of law and order, providing medical care to the victim, and expending U.S. military resources to investigate the offense.  *See id.*  It is

---

[2] Headquartered in Falls Church, Virginia.  *See* <u>Brehm</u>, 691 F.3d at 549
[3] Of 19,000 troops stationed at KAF, 15,000 were American.  *See id.*

this same reasoning the Court should apply to Mr. Peralta's case, and which indicates a due process violation, warranting dismissal of Count VII of the indictment.

## ARGUMENT AND CONCLUSION

The lack of any alleged or apparent knowledge on the part of the men who robbed and killed Agent Watson that he was in fact an American, let alone a DEA agent, places the prosecution of *all* counts of the indictment on questionable due process footing. But especially as to Mr. Peralta's alleged acts and charged offense, there are none of the keystones that would satisfy the nexus test utilized in this Circuit. The nature of his alleged conduct was local and personal – not aimed at the United States or its interests; his conduct as alleged could not have intended and did not intend to produce, nor did it actually produce, a detrimental effect on the United States. Therefore, it cannot be found that Mr. Peralta could reasonably have anticipated being haled into a United States Court for the acts alleged in the indictment, and he was denied fair warning that his activities as described might make him a criminal in the United States. *See* Bouie v. City of Columbia, 378 U.S. 347 (1964).

WHEREFORE, Mr. Peralta respectfully prays that this Honorable Court will dismiss Count VII of the indictment as unconstitutional as applied, and order his release forthwith.

Respectfully Submitted,
WILSON DANIEL PERALTA-BOCACHICA
By Counsel

RICH ROSENTHAL BRINCEFIELD MANITTA DZUBIN & KROEGER, LLP
By:_____/s/_____.
Lana Manitta, VSB #42994
201 N. Union St., Ste. 230
Alexandria, VA 22314
(703) 299-3440
FAX (703) 299-3441
LMManitta@RRBMDK.com
Counsel for Wilson Daniel Peralta-Bocachica


### CERTIFICATE OF ELECTRONIC FILING

I HEREBY CERTIFY THAT on September 15, 2014, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to the following registered users:

| | |
|---|---|
| Stacey Luck, AUSA | Todd Richman |
| | Counsel for Figueroa Sepulveda |
| Michael Ben'Ary, AUSA | |
| | Donald Harris |
| John Kiyonaga | Counsel for Valdes Gaultero |
| Counsel for Bello Murillo | |
| | Jonathan Simms |
| Douglas Steinberg | Counsel for Valdes Gualtero |
| Counsel for Lopez | |

_____/s/_____.
RICH ROSENTHAL BRINCEFIELD MANITTA DZUBIN & KROEGER, LLP
By:_____/s/_____.
Lana Manitta, VSB #42994
201 N. Union St., Ste. 230
Alexandria, VA 22314
(703) 299-3440
FAX (703) 299-3441
LMManitta@RRBMDK.com
Counsel for Wilson Daniel Peralta-Bocachica

7