**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA    ) | |
| ) | No. 1:13-cr-310 |
| v.    ) | |
| ) | The Honorable Gerald Bruce Lee |
| EDWIN GERARDO FIGUEROA    ) | |
| SEPULVEDA, et. al,    ) | Hearing:  October 6, 2014 |
| ) | |
| Defendants.    ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT PERALTA-
BOCACHICA'S MOTION TO DISMISS COUNT SEVEN OF THE INDICTMENT**

The United States of America, by and through its attorneys, hereby responds to Defendant Wilson Daniel Peralta-Bocachica's motion to dismiss Count Seven of the Indictment (Docket 97), charging the defendant with violating 18 U.S.C. § 1512(c) (obstruction of an official proceeding).  For the reasons articulated below, the charged elements of 18 U.S.C. § 1512 were generally intended to have extra-territorial effect and should be applied extra-territorially against the defendant Peralta-Bocachica.  The defendant Peralta-Bocachica's motion to dismiss Count Seven of the Indictment should, therefore, be denied.

**I.    Procedural and Factual Background**

**A.  Procedural Background**

On July 18, 2013, a federal grand jury returned an seven count Indictment that charged the defendant Peralta-Bocachica with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c) (Count Seven).  Peralta-Bocachica was the only defendant charged with Count Seven; the remaining six co-defendants were charged, *inter alia*, with murder of an internationally protected person and aiding and abetting that murder, in violation of 18 U.S.C. §§

1116(a), (c) and 2 (Count One); murder of an officer or employee of the United States and aiding and abetting that murder, in violation of U.S.C. §§ 1114 and 2 (Count Two); conspiracy to kidnap an internationally protected person, in violation of 18 U.S.C. § 1201(c) (Count Three); and kidnapping an internationally protected person and aiding and abetting that kidnapping, in violation of 18 U.S.C. §§ 1201 and 2 (Count Four).  Co-defendant Andres Alvaro Oviedo-Garcia was further charged with aiding and abetting others and assault on an officer or employee of the United States in violation of 18 U.S.C. § 111 and 2 (Count Five), as well as aiding and abetting and assault on an internationally protected person in violation of 18 U.S.C. § 112(a) and (3) and § 2 (Count Six).

In relevant part, the Indictment alleges, in paragraphs 8 through 16, that Peralta-Bocachica's six co-defendants were involved in the commission of "millionaire's ride" (also known as *paseo millionarios*) robberies, where they would "hold the victim in the back of the cab by force and threat of force" in order to rob them of valuables and bank cards.  Indictment at para. 12.  The Indictment goes on to allege, in paragraph 17, that on or about June 20, 2013, the defendants targeted Drug Enforcement Agency ("DEA") Special Agent ("SA") James Terry Watson for a millionaire's ride, and that the defendants transported and held SA Watson.

### B. Factual Background

As alleged in the indictment, the defendants, with the exception of defendant Peralta-Bocachica, were involved in a scheme to commit millionaire's ride robberies in Bogota, Colombia.  On or about June 20, 2013, in furtherance of this scheme, the defendants targeted SA

Watson.[1]  At approximately 11:00 p.m., SA Watson left a restaurant in Bogota, where he had been dining with DEA and international law enforcement colleagues.  SA Watson hailed a taxi ("Taxi #1") in the Parque 93 area of Bogota, a popular and affluent neighborhood known for high-end dining and shopping establishments.  Co-defendant Gracia Ramirez drove Taxi #1.  Once SA Watson entered Taxi #1, Gracia Ramirez engaged SA Watson in conversation in Spanish and determined that SA Watson was seeking a ride to the Marriott Hotel in Bogota.  As soon as Taxi #1 began to travel, a second taxi ("Taxi #2"), driven by co-defendant Lopez, pulled up behind Taxi #1.  Co-defendants Figueroa Sepulveda, Bello Murillo, and Valdes Gualtero were riding in Taxi #2.  A third taxi ("Taxi #3") was originally part of the robbery crew, but the taxi encountered mechanical problems a shortly before Taxi #1 picked up SA Watson.  The defendants intended for Taxi #3 to receive the victim's ATM and credit cards, and take them to automatic teller machines to withdraw cash from the victim's bank accounts using Personal Identification Numbers that the other defendants obtained from the victim by threat or force.

      After a short drive, co-defendant Gracia Ramirez alerted his other co-defendants that SA Watson was to be their next robbery victim.  As previously agreed, Gracia Ramirez alerted his co-defendants by pumping the brakes of his taxi to act as if it were experiencing engine trouble.  Upon receiving the signal, co-defendant Lopez confirmed his understanding of the plan by flashing the headlights of his car.  Taxi #1 then came to a stop, and Taxi #2 pulled up directly behind it.  Co-defendants Figueroa Sepulveda and Bello Murillo got out of the back seat of Taxi

---

[1] James Terry Watson was employed as a Special Agent with the Drug Enforcement Agency, a law enforcement agency of the United States.  He was designated as an Assistant Attaché for the United States Mission in Colombia, with duties at the Embassy Mission in Cartagena, Colombia.  As an Assistant Attaché, a diplomatic agent of the United States, SA Watson was an internationally protected person under international and United States law.

#2 and got into the back seat of Taxi #1, one on each side of SA Watson. Co-defendant Figueroa Sepulveda used a stun gun several times to incapacitate SA Watson. SA Watson struggled. During the struggle, co-defendant Bello Murillo stabbed SA Watson several times with a knife.

SA Watson was able to break free, but collapsed a short distance from the crime scene. Colombian National Police officers arrived several minutes later. The police put SA Watson in their vehicle and took him to the hospital, where he was pronounced dead shortly thereafter. The cause of SA Watson's death was blood loss as a result of multiple stab wounds. The manner of death was homicide.

Following the stabbing of SA Watson, Taxi #1 was returned to the custody of defendant Peralta-Bocachica. As noted by the defendant in his motion to dismiss Count Seven, Peralta-Bocachica operated Taxi #1 during the day, while another individual operated Taxi #1 at night. Mot. to Dismiss Count Seven, Dkt. No. 97 at 2, fn. 1. In the hours and days that followed the attack on SA Watson, however, the Colombian National Police directed that Taxi #1 be turned over to the police; the vehicle, which was the scene of the violent crimes committed against SA Watson, contained evidence related to the offenses committed against SA Watson alleged in the Indictment. From on or about June 21, 2013, the day after the alleged stabbing, through on or about June 28, 2013, defendant Peralta-Bocachica is alleged to have obstructed justice by, *inter alia*, cleaning the SA Watson's blood from the back seat of the taxi where SA Watson was stabbed, burning the rags that were used to clean the taxi, and removing and replacing, in their entirety, the back seats of the taxi where the victim was stabbed. It was only after taking the actions described above – obliterating evidence that was clearly the product of a harmful act or

series of acts – that the defendant Peralta-Bocachica turned Taxi #1 over to the Colombian National Police.

## II. DISCUSSION

### A. 18 U.S.C. § 1512(c) Should be Applied Extraterritorially Based Upon the Explicit Language of the Statute and Supreme Court Precedent

#### 1. Congress Intended 18 U.S.C. § 1512(c) to Have Extraterritorial Effect

In order "to protect against unintended clashes between our laws and those of other nations which could result in international discord," the "presumption against extra-territorial application of a federal statute can be overcome only if there is an affirmative intention of the Congress clearly expressed." *Reyes-Gaona v. North Carolina Growers* Ass'n, 250 F.3d 861, 864 (2001) (citing, in part, *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991)). The express clause of 18 U.S.C. § 1512(h), which states that "[t]here is extraterritorial Federal jurisdiction over an offense under this section," clearly overcomes the presumption against extra-territoriality by explicitly codifying Congress' intent that it be applied regardless of where the offense occurs.

Even without the express statement of 18 U.S.C. § 1512(h), however, any concerns regarding extra-territorial application of this federal obstruction statute would be arguably overcome by long-standing Supreme Court precedent regarding offenses directly injurious to the United States. *See Skiriotes v. State of Florida*, 313 U.S. 69, 73-74 (1941) ("a criminal statute dealing with acts that are <u>directly injurious to the government</u>, and are capable of perpetration without regard to particular locality is to be construed as applicable to citizens of the United States upon the high seas or in a foreign country, though there be no express declaration to that effect" (emphasis added)). Furthermore, as a court in this district recently held in *United States*

5

*v. Hasan*, 747 F. Supp. 2d 642, 684-685 (E.D.V.A. 2010) (holding that a crime of violence committed on the high seas may be prosecuted pursuant to federal law), ancillary statutes may be applied extraterritorially when the substantive statutes are so applied. Based upon these precedents, the charges against the defendant Peralta-Bocachica – which allege the defendant's obstruction of official proceedings into underlying offenses against an internationally protected person and federal officer of the United States who was, among other things, kidnapped, assaulted, and murdered – should apply extra-territorially even if the defendant committed his offenses outside the physical boundaries of the United States.

### 2. Long-Standing Supreme Court Precedents Have Applied Obstruction of Official Proceedings and its Class of Offenses Extra-Territorially, Even Against Accessories or "Innocent Agents" to the Crime

In *United States v. Bowman*, 260 U.S. 94 (1922), the Supreme Court noted that the presumption against extra-territoriality should not be applied to "criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the <u>right of the government to defend itself against obstruction . . . wherever perpetrated</u> . . ." *Id.* at 98 (emphasis added). The Supreme Court further emphasized that to exclude extra-territorial application of such statutes – while specifically identifying offenses against the operation of the government as being included in such statutes – "would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the locus shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense." *Ibid.* This Supreme Court further expanded this line of reasoning to include within the

scope of an extra-territorial law an "innocent agent" who served as an accessory to a crime.  In *Ford v. United States*, 273 U.S. 593, 623 (1927), the Supreme Court favorably cited language noting that a defendant who "willfully puts in motion a force to take effect in it is answerable at the place where the evil is done" and "an innocent agent" may be held liable since "what one does through another's agency is to be regarded as done by himself." (internal quotations and citations omitted).

### B. A "Nexus" To the United States, If Required, Is Sufficiently Met by the Facts of this Case and the Statute be Applied against the Defendant Peralta-Bocachica

Recent Supreme Court precedents have focused their analysis on Congress' intent to apply statutes extra-territorially, rather than any due process-based constitutional boundaries that may apply regardless of Congress' intent.  In *Morrison v. National Australia Bank, Ltd.,* 561 U.S. 247, the Supreme Court reiterated that it is a "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States," and that "[t]his principle represents a canon of construction, or a presumption about a statute's meaning, rather than a limit upon Congress's (sic) power to legislate."  (internal quotations and citations omitted).  *See also United States v. Verdugo-Urquidez*, 494 U.S. 259, 269, 272-273 (observing "we have rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States" and holding that the Fourth Amendment did not apply to the search and seizure by U.S. agents of property located in a foreign country that was owned by a defendant who, having been arrested overseas and brought to the United States, "had no voluntary connection with this country").  *But see Bowman*, 260 U.S. at 95, 102-103 (American citizens who had committed a crime on a U.S. ship docked in a foreign port "against the government to which they owe allegiance" could be

prosecuted, but deferring judgment on whether the United States had jurisdiction over an unapprehended British citizen).  Nevertheless, if this Court were to apply a due process-based nexus requirement to the facts of this case, as they have been applied in the cases cited by the defendant and based, in part, on facts admitted by the defendant in his motion, 18 U.S.C. § 1512 should be applied extra-territorially against the defendant Peralta-Bocachica.

In *United States v. Ayesh*, 702 F.3d 162, 167 (4th Cir. 2012), *inter alia*, the Fourth Circuit favorably cited the district court's application of a due process analysis to the extra-territorial application of a statute, noting that a statute may not be applied unless due process has been satisfied through the finding of a sufficient "nexus" between the defendant and the United States.  The Fourth Circuit had previously indicated in *United States v. Mohammad-Omar,* 323 Fed. Appx. 259 (4th Cir. 2009) (unpublished), that, regardless of the express nature of Congress' intent, "a due process analysis must be undertaken to ensure the reach of Congress does not exceed its constitutional grasp," specifically, through an analysis of a nexus requirement that "ensures that a United States court will assert jurisdiction only over a defendant who should reasonably anticipate being haled into court in this country." *Id.* at 261, fn. 2 (citation omitted). In *Mohammad-Omar*, the Fourth Circuit observed that the defendant had "ample reason to anticipate being haled into court in the United States" because he was alleged to have known that the drugs he trafficked were destined for the United States. *Id.* at 262.  Similarly, the defendant Peralta-Bocachica knew that his particular taxi, which he operated in conjunction with a co-defendant, was aware that his particular taxi was the subject of intense media coverage and speculation in association with the murder of United States SA Watson and its related offenses.

In his motion, the defendant acknowledges that he was aware that Taxi #1 was the subject of a direction from Colombian National Police, and that a "third man," with whom the defendant Peralta-Bocachica claims he cleaned the car, "became aware of the car's involvement in the crime sometime within the twenty-four hours after Agent Watson's murder." Mot. to Dismiss Count Seven at 2, fn. 2. News relating to the death of SA Watson had been widely broadcast in the area and the defendant was clearly aware that the significant amount of blood in the back seat of his vehicle, which he was cleaning in anticipation of transferring it to the custody of Colombian National Police. The defendant did not merely clean up the evidence of the crime scene – he mopped up the blood with rags that he subsequently ordered to be burned, and then, not satisfied with merely cleaning the evidence, replaced the entire back seat where SA Watson had been repeatedly stabbed with a different one. Given the wide distribution of the information regarding SA Watson's death, the specific instruction that Taxi #1 be transferred to the custody of Colombian National Police, the defendant's awareness of this instruction and the interest of the Colombian National Police in the vehicle, and the defendant's active involvement in the destruction of the evidence related to acts of violence committed therein, the defendant – similar to the defendant in *Mohammad-Omar* – had ample reason to anticipate being haled into a U.S. court. The facts are, therefore, more than sufficient to meet the nexus requirement articulated in *Mohammad-Omar* and related cases within this district and the defendant's motion to dismiss Count Seven should be denied.

### III.   CONCLUSION

For the foregoing reasons, the extra-territorial application explicitly stated in 18 U.S.C. § 1512 should be applied against the defendant Peralta-Bocachica, even assuming a nexus to the

defendant is required for constitutional sufficiency, and the defendant's motion to dismiss Count Seven of the Indictment should be denied.

        Respectfully submitted,

        Dana J. Boente
        United States Attorney

        Leslie R. Caldwell
        Assistant Attorney General
        Criminal Division

By:   /s/
        Michael P. Ben'Ary
        Assistant United States Attorney
        United States Attorney's Office
        2100 Jamieson Avenue
        Alexandria, VA 22314
        Phone: (703) 299-3700
        Fax: (703) 299-3980
        E-mail: michael.ben'ary2@usdoj.gov

        /s/
        Stacey Luck
        Special Counsel
        Human Rights and Special Prosecutions Section
        Criminal Division, U.S. Department of Justice
        1301 New York Ave.
        Washington, D.C. 20005
        Phone: 202-514-5650
        E-mail: stacey.luck@usdoj.gov

Dated: September 29, 2014

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document has been filed with the Clerk of Court on this 29th day of September 2014, and that true and accurate copies have been transmitted electronically to:

Todd M. Richman
Office of the Federal Public Defender
1650 King St., Suite 500
Alexandria, VA 22314
(703) 600-0800
Email: Todd_Richman@fd.org

Donald Edwin Harris
Harris Law Firm
2815 Duke St.
Alexandria, VA 22314
(703) 224-8810
dharris.esq3@gmail.com

John C. Kiyonaga
The Law Office of John C. Kiyonaga
108 North Alfred St.
Alexandria, VA 22314
(703) 739-0009
john@johnckiyonaga.com

Lana Marie Manitta
Rich Rosenthal Brincefiled Manitta Dzubin
& Kroeger LLP
201 N. Union St... Suite 230
Alexandria, VA 22314
(703) 299-3440
lmmanitta@rrbmdk.com

                    By:   /s/
                          Michael P. Ben'Ary
                          Assistant United States Attorney
                          United States Attorney's Office
                          2100 Jamieson Avenue
                          Alexandria, VA 22314
                          Phone: (703) 299-3700
                          Fax: (703) 299-3980
                          E-mail: michael.ben'ary2@usdoj.gov